## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| E-LINK TECHNOLOGY CO., LTD. | |
| Plaintiff, | |
| v. | Case No.: 1:20-cv-00247 |
| SHENZHEN UNI-SUN ELECTRONICS CO., LTD., and Unknown Persons and/or Entities doing business under Amazon Seller IDs "FEISHAZO", "LEMONGREEN", AND "JIANGKUN", | |
| | Hon. John J. Tharp, Jr. |
| Defendants. | |

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY, AND SERVICE OF PROCESS BY EMAIL

Plaintiff, E-Link Technology Co., Ltd. ("E-Link") submits this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a temporary injunction, a temporary asset restraint, expedited discovery, and service of process by email (the "*Ex Parte* Motion").

# **TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................ 1

II. STATEMENT OF FACTS ........................................................................................... 2

   A. E-Link's Business, Products, and Patents.......................................................... 2

   B. Defendants' Infringing Activities ...................................................................... 3

III. ARGUMENT ............................................................................................................. 4

   A. E-Link Meets the Legal Standard for a Temporary Restraining Order and Preliminary Injunction .......................................................................................................... 6

   B. E-Link Will Likely Succeed on the Merits......................................................... 6

   C. E-Link Will Be Irreparably Harmed in the Absence of a Temporary Restraining Order............................................................................................................... 9

   D. The Balance of Equities Tips in E-Link's Favor ........................................     11

   E.  Issuance of an Injunction is in the Public Interest ............................................ 12

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE .................................... 14

   A. An Order Immediately Enjoining Defendants' Infringing Conduct is Appropriate ........... 14

   B. An Order Preventing Transfer of Seller IDs During the Pendency of this Action ............. 15

   C. An Order Preventing Fraudulent Transfer of Assets is Appropriate................................... 15

   D. Plaintiff Is Entitled to Expedited Discovery....................................................... 17

   E.  Service of Process by Email is Warranted in this Case ..................................... 19

V.  A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ................................. 21

VI. CONCLUSION ........................................................................................................ 22

## **TABLE OF AUTHORITIES**

Cases

*Abercrombie & Fitch Trading Co. v. 4cheapbags.com,*
 No. 1:12-cv-21088 (S. D. Fla. June 6, 2012) (unpublished)...................................................21

*Advanced Commc'n Design, Inc. v. Premier Retail Networks, Inc.,*
 46 Fed. App'x 964 (Fed. Cir. 2002).........................................................................................8

*Animale Grp. Inc. v. Sunny's Perfume Inc.,*
 256 F. App'x 707, 709 (5th Cir. 2007)....................................................................................16

*Apple Corps Ltd. v. 3W Store,*
 2018 U.S. Dist. LEXIS 62250 (S.D. Fla. Apr. 11, 2018).........................................................18

*Apple Inc. v. Samsung Electronics Co.,*
 809 F.3d 633 (Fed. Cir. 2015) ................................................................................................13

*Aqua Shield v. Inter Pool Cover Team,*
 774 F.3d 766 (Fed. Cir. 2014) ................................................................................................16

*AstraZeneca LP v. Apotex, Inc.,*
 633 F.3d 1042 (Fed. Cir. 2010) ................................................................................................6

*Bell & Howell Document Management Products Co. v. Altek Systems,*
 132 F.3d 701 (Fed. Cir. 1997) ..................................................................................................9

*Bowers v. Baystate Techs., Inc.,*
 320 F.3d 1317 (Fed. Cir. 2003) ................................................................................................7

*Cal. Med. Prods., Inc. v. Emergency Med. Prods., Inc.,*
 796 F. Supp. 640 (D.R.I. 1992)...............................................................................................12

*Charter National Bank & Trust v. Charter One Financial, Inc.,*
 No. 01 C 0905, 2001 U.S. Dist. LEXIS 6531 (N.D. Ill. May 15, 2001)....................................6

*Coach, Inc., et al. v. Does 1-100,*
 No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished) .....................................................21

*Cobraco Manufacturing Co. v. Valley View Specialties Co.,*
 No. 90 C 0284, 1990 U.S. Dist. LEXIS 10958 (N.D. Ill. Jan. 19, 1990)................................12

*Columbia Pictures Indus., Inc. v. Jasso,*
 927 F. Supp. 1075 (N.D. Ill. 1996) ...........................................................................................5

iii

*Deckers Outdoor Corp. v. Does 1-1,281*,
  No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) ...................................... 21

*Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*,
  No. 13 C 2167, 2013 U.S. Dist. LEXIS 47248 (N.D. Ill. Mar. 27, 2013).......................... 11, 21

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
  717 F.3d 1336 (Fed. Cir. 2013) ................................................. 10

*Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis*,
  35 F.3d 1134 (7th Cir. 1994) ................................................. 10

*Georgia-Pacific Corp. v. United States Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970) ................................................. 16

*Gillespie v. Civiletti*,
  629 F.2d 637, 642 (9th Cir. 1980) ................................................. 17

*Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America Inc.*,
  549 F.3d 1079 (7th Cir. 2008) ................................................. 12

*Granny Goose Foods, Inc., v. Brotherhood of Teamsters*,
  415 U.S. 423 (1974)................................................. 5

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
  174 F.3d 411 (4th Cir. 1999) ................................................. 21

*i4i Ltd. Partnership v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010) ................................................. 11

*In re LDK Solar Securities Litigation*,
  No. C 07-05182 WHA, 2008 U.S. Dist. LEXIS 90702 (N.D. Cal. June 12, 2008).................. 20

*In re Potash Antitrust Litig.*,
  667 F. Supp. 2d 907 (N.D. Ill. 2009) ................................................. 20

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*,
  51 F.3d 982, 987 (11th Cir. 1995) ................................................. 16

*National Presto Indus. Inc. v. Dazey Corp.*,
  18 U.S.P.Q.2d 1113 (N.D. Ill. 1990) ................................................. 13

*Nike, Inc. v. Meitac Int'l Enterprise Co., Ltd.*,
  2006 U.S. Dist. LEXIS 94662 (D. Nev. 2006)................................................. 12

iv

*Oakley, Inc. v. Does 1-100*,
  No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) ........................................................ 21

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340, 351, 98 S.Ct. 2380 (1978) .................................................................................. 17

*Park v. O-Sung & Co.*,
  No. 97 C 0924, 1997 U.S. Dist. LEXIS 10967 (N.D. Ill. July 23, 1997) ................................... 9

*Pause Tech. LLC v. TiVo Inc.*,
  419 F.3d 1326 (Fed. Cir. 2005) .................................................................................................. 7

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) .................................................................................................. 7

*Pioneer Hi-Bred International, Inc. v. Ottawa Plant Food, Inc.*,
  219 F.R.D. 135 (N.D. Iowa 2003) ............................................................................................. 17

*Polymer Technologies, Inc. v. Bridwell*,
  103 F.3d 970 (Fed. Cir. 1996) ................................................................................................... 10

*Promatek Industries, Ltd. v. Equitrac Corp.*,
  300 F.3d 808 (7th Cir. 2002) ..................................................................................................... 10

*Rathmann Grp. v. Tanenbaum*,
  889 F.2d 787 (8th Cir. 1989) ..................................................................................................... 21

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*,
  970 F.2d 552, 559 (9th Cir. 1992) ............................................................................................. 16

*Robert Bosch, LLC v. Pylon Mfg. Corp.*,
  659 F.3d 1142 (Fed. Cir. 2011) ................................................................................................. 11

*Smith International, Inc. v. Hughes Tool Co.*,
  718 F.2d 1573 (Fed. Cir. 1983) ................................................................................................. 12

*Spectralytics, Inc. v. Cordis Corp.*,
  649 F.3d 1336 (Fed. Cir. 2011) .................................................................................................. 9

*Talavera Hair Products, Inc. v. Taizhou Yunsung Electrical Appliance Co., Ltd.*,
  No. 18-CV-823-JLS (JLB), 2018 U.S. Dist. LEXIS 1990203 (S.D. Cal. May 10, 2018) ........ 18

*Titan Tire Corp. v. Case New Holland, Inc.*,
  566 F.3d 1372 (Fed. Cir. 2009) .............................................................................................. 7 ,8

*Tory Burch LLC v. Zhong Feng, et al.*,
  No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished) ................................................... 21

*True Religion Apparel, Inc. v. Does 1-100,*
 No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished)........................................................ 21

*TWM Mfg. v. Dura Corp.,*
 789 F.2d 895 (Fed. Cir. 1986) ................................................................................................. 17

*Vance v. Rumsfeld,*
 No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007).................................... 17

*Wyers v. Master Lock Co.,*
 616 F.3d 1231 (Fed. Cir. 2010) ................................................................................................. 8

*z4 Techs., Inc. v. Microsoft Corp.*
 507 F.3d 1340 (Fed. Cir. 2007) ............................................................................................... 16

*z4 Techs., Inc. v. Microsoft Corp.,*
 2006 U.S. Dist. LEXIS 58374 (E.D. Tex. 2006)..................................................................... 16

<u>Statutes</u>

35 U.S.C. § 171 ..................................................................................................................... 8

35 U.S.C. § 271(a) ............................................................................................................... 7

35 U.S.C. § 282 ..................................................................................................................... 8

35 U.S.C. § 283 ............................................................................................................... 6, 14

35 U.S.C. §§ 102-103 .......................................................................................................... 8

Fed. R. Civ. P. 26(b)(2) ..................................................................................................... 17

Fed. R. Civ. P. 4(f)(3) ........................................................................................................ 19

Fed. R. Civ. P. 65 ............................................................................................................... 14

Fed. R. Civ. P. 65(b) ................................................................................................... 5,14,20

Fed. R. Civ. P. 65(c) ........................................................................................................... 21

Fed. R. Civ. P. 65(d)(2)(C) ........................................................................................... 14,19

## MEMORANDUM OF LAW

### I.    INTRODUCTION

E-Link is the assignee and 100% right owner of U.S. Patent Number US 10,358,081 (the "'081 Patent") and sells hoverboards, also known as two-wheeled self- balancing electric scooters, under its own brand names as well as authorized OEM brands, that embody and practice the invention of the '081 Patent.

Defendant Shenzhen Uni-Sun Electronics Co., Ltd. ("Uni-Sun") and Defendants identified by their Amazon Seller IDs as "FEISHAZO", LEMONGREEN" and "JIANGKUN" (the "Amazon Defendants") (collectively, "Defendants") have infringed and continue to infringe the '081 Patent directly and/or indirectly, by making, using, selling, offering for sale, and/or importing into the United States the  Uni-Sun hoverboards with a model number HY-A06 (the "Accused Products").

E-Link's well-pleaded factual allegations and evidence submitted through declarations establish that issuing a temporary restraining order against Defendants is both necessary and proper.

E-Link demonstrates: (1) a strong likelihood of success of its patent infringement claim; (2) immediate and irreparable harm to E-Link; (3) the balance of equities favors E- Link; and (4) an injunction is in the public interest.

Defendants' ongoing unlawful activities should be restrained, and E-Link respectfully requests that this Court issue an *ex parte* temporary restraining order.

Specifically, E-Link seeks an order: (1) temporarily restraining Defendants' continued manufacture, importation, distribution, offering for sale, and sale of the Accused Products; (2) temporarily restraining Defendants from transferring use or control of the Amazon Seller IDs

being used and controlled by Defendants to other parties; (3) temporarily restraining Defendants'

assets to preserve Plaintiff's right to an equitable accounting; (4) for expedited discovery

allowing Plaintiff to discover Amazon Defendants' email addresses and inspect and copy

Amazon Defendants' records  relating to the manufacture, distribution, offering for sale, and sale

of the Accused Products and Amazon Defendants' financial accounts; and (5) authorizing service

by electronic mail.

## II.  STATEMENT OF FACTS

### A.  E-Link's Business, Products, Trademarks and Patents

Founded in 2008, E-Link is a company designs, manufactures and sells electric devices

and toys, including but not limited to hoverboards. *See* Declaration of LIPINGZHI

("LIPINGZHI Decl.") at ¶ 2. E-Link is the registered owner to six US registered trademarks,

including: "HYPER GOGO" (Registration Number 5267521), "IFANS IFANSPACE.COM"

(Registration Number 5578031), "ASIWO" (Registration Numbers 5729670 & 5875140), "AB

ANGELBOARD" (Registration Number 5798088), and "TWO DOTS" (Registration Number

5936929). *Id*. at ¶ 3. E-link is the assignee to at least three US patents, namely, US 10,358,081

(the "'081 Patent"), US D810618, and US D780626. *Id.* at ¶ 4. All are related to hoverboards

applications. *Id.* Particularly, the '081 Patent, "WHEELED VEHICLE AND WHEEL OF THE

SAME," was duly and legally issued by the United States Patent and Trademark Office on July

23, 2019. It is related to a novel design of wheels to the hoverboards. The wheels embodying

the '081 Patent appear to have LED lights extending infinitely into the interior of the wheels,

which may be referred as the "endless lights" effect. *Id.* at ¶ 6.

E-link devoted a team of ten employees, and spent approximately 6 months and $100,000

to develop the design which forms the basis of the '081 Patent. *Id.* at ¶ 5. The hoverboards with

the "endless lights" has been a great success to E-Link's sales, including its sales on Amazon. *Id.* at ¶ 7. As part of the campaign to promote its goodwill and ensure its sales, E-Link has been spending $500 daily on Amazon advertisements, and approximately $150,000 so far. *Id.* at ¶ 8.

### B.      Defendants' Infringing Activities

Defendant Uni-Sun is a company believed to be organized and existing under the laws of the People's Republic of China, with its principal place of business at Bldg A, No. 43 Lan Er Road, Long Xin Community, Longgang District, Shenzhen, Guangdong, China 518116. *See* Declaration of Haoyi Chen ("Haoyi Chen Decl.") at ¶ 11. Uni-Sun has infringed and continue to infringe the '081 Patent. Specifically, Uni- Sun manufactures, sells and offers to sell the Accused Products in the United States via at least the Amazon Defendants. *Id.* at ¶¶ 5-9.

The Amazon Defendants have infringed and continue to infringe the '081 Patent. Specifically, the Amazon Defendants sell and offer to sell the Accused Products in the United States via Amazon. *Id.* The Amazon Defendants create virtual stores on Amazon to sell or offer to sell the Accused Products, while their real identifications, as well as the interworking of the infringement activities among the Defendants, are hidden. *See Id.* at ¶ 4.

On or around November, 2019, E-link noticed that Uni-Sun and the Amazon Defendants stated to sell or offer to sell the Accused Products in the US market. The Accused Products under the brand names "FLYING-ANT", "SISIGAD" and "BENEDI", include the same features claimed in the '081 Patent. Upon further research, E-Link discovered that Uni-Sun owns the SISIGAD and FLYING-ANT Trademark applications. *Id.* at ¶ 11.

Upon information and belief, Uni-Sun, directly and/or through its subsidiaries, affiliates, agents, and/or business partners, such as the Amazon Defendants: (1) manufacturers and/or induces the manufacture the Accused Products; (2) imports and/or induces the importation of the

Accused Products into the United States; and (3) sells and/or induces the sale of the Accused Products in the United States.

On December 5, 2019, Defendant 1 sold one unit of the Accused Products to a representative of E-Link. LIPINGZHI Decl. at ¶ 13.

On December 5, 2019, Defendant 2 sold one unit of the Accused Products to a representative of E-Link. *Id.*

On December 5, 2019, Defendant 3 sold one unit of the Accused Products to a representative of E-Link. *Id.*

The Accused Products infringe at least claims 1 - 2, 7 - 11, and, 18 - 20 of the '081 Patent. As demonstrated in the complaint and Declaration(s) attached herein, the Accused Products include all elements of claims 1 - 2, 7 - 11, and, 18 - 20 of the '081 Patent, and therefore, literally infringe the '081 Patent. *See* Declaration of Mingshao Zhang.

## III.    ARGUMENT

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, this Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). Courts have recognized that civil actions against infringers present special challenges that justify proceeding on an *ex parte* basis. *See Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers before temporary…relief can be granted"). Further, an *ex parte* order preserves the status quo and prevents irreparable harm. *See Granny Goose Foods, Inc., v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974).

This is precisely the type of relief E-Link seeks.

Defendants here offer to sell and sell the Accused Products within the United States.[1] The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from selling the Accused Products, and transferring its unjustified gains out of the United States during the pendency of this lawsuit, and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, Defendants can and likely will modify registration data and content, and/or move any assets from U.S.-based bank accounts, including its Amazon accounts. Haoyi Chen Decl. at ¶ 18.

In seeking an order restraining Defendants from infringing the '081 Patent, E- Link is requesting this Court's assistance to preserve the status quo and prevent irreparable harm until the Court is able to hold a hearing on these issues. As such, E-Link respectfully requests that this Court issue the requested *ex parte* temporary restraining order.

## A.    E-Link Meets the Legal Standard for a Temporary Restraining Order and Preliminary Injunction

This Court is specifically authorized to issue injunctive relief in this case under Section 283 of the Patent Act which provides, "[t]he several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283.

Under Federal Circuit law, to obtain injunctive relief, a plaintiff must demonstrate:

(1) a likelihood of success on the merits; (2) irreparable harm in the absence of an injunction; (3) that the balance of equities tips in plaintiff's favor; and (4) that injunctive relief is in the public's interest. *See AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1049 (Fed. Cir.

---

[1] E-Link believes that, through discovery, it will be able to demonstrate that Defendants also import and/or use the Accused Products in the United States.

2010).

District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g., Charter National Bank & Trust v. Charter One Financial, Inc*., No. 01 C 0905, 2001

U.S. Dist. LEXIS 6531, at *1 (N.D. Ill. May 15, 2001).

As explained in detail below, each of these four factors weighs heavily in E-Link's favor.

**B.     E-Link Will Likely Succeed on the Merits**

E-Link is likely to succeed on the merits of its patent infringement claim. To establish a likelihood of success on the merits of its patent infringement claims, E-Link "must show that it will likely prove infringement, and that it will likely withstand challenges, if any, to the validity of the patent." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009). E-Link can satisfy these requirements.

1.     Defendants Infringe the '081 Patent

A defendant is liable for patent infringement if it, "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States and patent invention during the term of the patent thereof." 35 U.S.C. § 271(a). "A determination of infringement is a two-step process. The court must (1) construe the asserted claims and then (2) compare the properly construed claims to the allegedly infringing devices." *Pause Tech. LLC v. TiVo Inc.*, 419 F.3d 1326, 1335 (Fed. Cir. 2005) (citations omitted). In comparing utility patent claims to an accused product, a patent owner must prove that "the accused device contains each limitation of the asserted claim, or an equivalent of each limitation." *Bowers v. Baystate Techs., Inc.*, 320 F.3d  1317, 1334 (Fed. Cir. 2003) (citations omitted).

First, all of the terms in the claims of the '081 Patent should be construed according to the

definitions provided by the applicant in the specification, or if not explicitly defined, according to their ordinary meanings as understood by a person of ordinary skill in the art. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005).

Second, Declaration of Mingshao Zhang demonstrates that under the plain meaning of the claim language, the Accused Products infringe at least claims 1 - 2, 7 - 11, and, 18 - 20 of the '081 Patent. Specifically, said Declaration demonstrates that the Accused Products literally include each and every element of claims 1 - 2, 7 - 11, and, 18 - 20 of the '081 Patent under any reasonable interpretation of those claims.

Accordingly, E-Link is likely to succeed on the merits of its claim that Defendants infringe the '081 Patent.

## 2.    The '081 Patent is Valid

An issued United States patent is given a statutory presumption of validity. *See* 35 U.S.C. §§ 171, 282; *Advanced Commc'n Design, Inc. v. Premier Retail Networks, Inc.*, 46 Fed. App'x 964, 983 (Fed. Cir. 2002). A trial court can deny a preliminary injunction if it "concludes there is a 'substantial question' concerning the validity of the patent, meaning that the alleged infringer has presented an invalidity defense that the patentee has not shown lacks substantial merit." *Titan Tire*, 566 F.3d at 1379 (Fed. Cir. 2009). Here, E-Link will likely withstand a validity challenge to the '081 Patent, and Defendants will not be able to successfully raise a substantial question of validity.

Invalidity is generally proven by demonstrating that the patented invention is either anticipated or rendered legally obvious by the prior art. *See* 35 U.S.C. §§ 102-103. E-Link is not aware of any evidence that would tend to anticipate the claims of the '081 Patent. With respect to obviousness, various secondary considerations support the nonobviousness of the '081 Patent.

*See generally Wyers v. Master Lock Co.*, 616 F.3d 1231, 1245 (Fed. Cir. 2010) (discussing "secondary indicia of nonobviousness" such as commercial success and copying).

E-Link has enjoyed significant commercial success with its patented hoverboards, which provides secondary consideration suggesting that the '081 Patent is not obvious. *See, e.g.*, *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1344 (Fed. Cir. 2011) ("There was substantial evidence whereby a reasonable jury could have found copying and commercial success, and could have weighed these factors in favor of nonobviousness.").

Therefore, E-Link will likely be able to prove that the Accused Products infringe the '081 Patent, and that the '081 Patent is not invalid. Accordingly, E-Link is likely to succeed on its patent infringement claims.

### C.    E-Link Will Be Irreparably Harmed in the Absence of a Temporary Restraining Order

E-Link will undoubtedly be irreparably harmed in the absence of a temporary restraining order and preliminary injunction. Irreparable harm is presumed in patent infringement cases where a clear showing of patent validity and infringement has been made. *See Bell & Howell Document Management Products Co. v. Altek Systems*, 132 F.3d 701, 708 (Fed. Cir. 1997) ("In matters involving patent rights, irreparable harm has been presumed when a clear showing has been made of patent validity and infringement.") (citations omitted).

The harm will also occur in the form of the loss of E-Link's exclusive patent rights, loss of market share that E-Link may never be able to recover, and immeasurable damage to E-Link's goodwill and reputation as the creator and only authorized provider of its patented invention. "Harm is irreparable if it cannot be prevented or fully rectified by the final judgment after trial." *Park v. O-Sung & Co.*, No. 97 C 0924, 1997 U.S. Dist. LEXIS 10967, at *11-12 (N.D. Ill. July 23, 1997) (internal quotations omitted).

Injuries related to E-Link's potential loss of market share and loss of exclusive patent rights cannot be readily quantified and relief may never occur. The Accused Products directly compete with the E-Link's products. LIPINGZHI Decl. at ¶ 17. As the court in *Polymer Technologies, Inc. v. Bridwell* noted:

Competitors change the marketplace. Years after infringement has begun, *it may be impossible to restore a patentee's (or an exclusive licensee's) exclusive position by an award of damages and a permanent injunction*. Customers may have established relationships with infringers. The market is rarely the same when a market of multiple sellers is suddenly converted to one with a single seller by legal fiat. Requiring purchasers to pay higher prices after years of paying lower prices to infringers is not a reliable business option. *Polymer Technologies, Inc. v. Bridwell*, 103 F.3d 970, 975-76 (Fed. Cir. 1996) (emphasis added); *see also Douglas Dynamics, LLC v. Buyers Prods. Co.,* 717 F.3d 1336, 1345 (Fed. Cir. 2013) (Rader, C.J.) ("mere damages will not compensate for a competitor's increasing share of the market, a market which [the patentee] competes in, and a market that [the patentee] has in part created with its investment in patented technology."). Similarly, here, damages alone will not compensate E-Link for its lost market share.

Second, Defendants' infringement erodes and devalues E-Link's intellectual property rights, thereby inflicting injury to E-Link's goodwill and reputation. The extent of the harm to E-Link's goodwill and reputation and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law); *Gateway Eastern*

*Railway Co. v. Terminal Railroad Assoc. of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages").

Defendants are making and selling a product that functions exactly like E-Link's patented hoverboards, for the purposes of directly and unfairly competing therewith. This will irreparably harm E-Link's reputation among consumers and will likely invite even further infringement from Defendants and others. LIPINGZHI Decl. at ¶ 16.

Finally, because Defendant Uni-Sun is a foreign entity and the true identity of the Amazon Defendants are individuals or entities of unknown citizenship and residence, any monetary judgement may be difficult to collect and/or is not likely to be collected, and therefore, injunctive relief is the only available relief at this time. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) ("[A]ll three defendants are foreign corporations and [ ] there is little assurance that [plaintiff] could collect monetary damages.") (citations omitted).

Therefore, because E-Link is likely to lose its exclusive patent rights, lose market share, and unlikely to recover any monetary judgement, it will suffer irreparable harm in the absence of a temporary restraining order and preliminary injunction.

### D.     The Balance of Equities Tips in E-Link's Favor

Under the "balance of equities" factor, a court "assesses the relative effect of granting or denying an injunction on the parties." *i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 863 (Fed. Cir. 2010). In this case, the balance of hardships tips decidedly in E-Link's favor.

In analyzing this factor, courts apply "a sliding scale approach: the more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he

is to win, the more need it weigh in his favor." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*, No. 13 C 2167, 2013 U.S. Dist. LEXIS 47248, at *22 (N.D. Ill. Mar. 27, 2013) (quoting *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of America Inc.*, 549 F.3d 1079, 1082 (7th Cir. 2008)).

As discussed above, E-Link is likely to suffer irreparable harm absent a temporary restraining order and injunction. *See Nike, Inc. v. Meitac Int'l Enterprise Co., Ltd.*, 2006 U.S. Dist. LEXIS 94662, *3 (D. Nev. 2006) ("Nike will be severely handicapped in its ability to prevent further importation of Accused Products, thereby destroying any potential of preserving the status quo pending a resolution of this case on its merits."). Additionally, E-Link's reputation will be harmed if Defendants are allowed to continue to import and/or sell the Accused Products because E-Link will be unable to effectively police the market and enforce its intellectual property rights. *See Cal. Med. Prods., Inc. v. Emergency Med. Prods., Inc.*, 796 F. Supp. 640, 647 (D.R.I. 1992) ("Denial of the motion for injunctive relief, therefore, would cause considerable harm to [the patentee's] reputation and threaten its market position. . . . Accordingly, the Court finds that the potential harm to [the patentee] outweighs the potential harm to [the defendant].").

Thus, because the '081 Patent is both valid and infringed and because E-Link is likely to suffer irreparable harm absent an injunction, the balance of equities weigh strongly in E-Link's favor.

Furthermore, even if any harm were to weigh in Defendants' favor, the security E- Link will post against the temporary restraining order will offer compensation in the unlikely event that Defendants are not found to infringe the '081 Patent.

**E.    Issuance of an Injunction is in the Public Interest**

Public policy favors protection of the right secured by valid patents. *Cobraco Manufacturing Co. v. Valley View Specialties Co.*, No. 90 C 0284, 1990 U.S. Dist. LEXIS 10958, at *8 (N.D. Ill. Jan. 19, 1990) (citing *Smith International, Inc. v. Hughes Tool Co.*, 718 F.2d 1573, 1581 (Fed. Cir. 1983). Additionally, "the public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his invention." *Apple Inc. v. Samsung Electronics Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015) (citations omitted). The grant of an injunction would further the public's confidence in the patent and judicial system and provide incentives for inventors and corporations to continue developing innovative products and patenting new ideas without the fear they will be unable to stop potential infringers.

Moreover, an injunction will not harm the public because there are other hoverboards on the market that are not covered by the '081 Patent. The public will be able to purchase these other non-infringing devices, despite an injunction against the Defendants. *See National Presto Indus. Inc. v. Dazey Corp.*, 18 U.S.P.Q.2d 1113, 1121 (N.D. Ill. 1990) (granting TRO; "If an injunction makes the [defendant's product] unavailable, the public has plenty of substitutes, including [plaintiff's products]."); *see also Apple Inc. v. Samsung Electronics Co.*, 809 F.3d at 647 (finding that the public interest factor weighed in favor of an injunction; "This is not a case where the public would be deprived of Samsung's products. Apple does not seek to enjoin the sale of lifesaving drugs, but to prevent Samsung from profiting from the unauthorized use of infringing features in its cellphones and tablets.").

Removing the Accused Products from the marketplace will not cause a shortage of hoverboards because the marketplace will be supplied by E-link and other lawful suppliers with additional products to prevent any shortage. Accordingly, the public interest favors granting

19

injunctive relief.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

In addition to this Court's inherent authority to issue injunctive relief, Section 283 of the Patent Act authorizes courts to issue injunctive relief "in accordance to the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Fed. R. Civ. P. 65. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third-parties, including financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Id. The facts in this case warrant such relief.

### A. An Order Immediately Enjoining Defendants' Infringing Conduct is Appropriate

E-Link requests an order requiring Defendants to immediately cease infringing the '081 Patent, including on or in connection with all Internet-based-e-commerce stores owned and operated, or, controlled by them. Specifically, Defendants must immediately cease:

1. Offering for sale and selling the HY-A06 model hoverboards under the brand names FLYING-ANT, SISIGAD and/or BENEDI; and,

2. Importing into the United States the HY-A06 model hoverboards under the brand names FLYING-ANT, SISIGAD and/or BENEDI.

Defendants make, use, offer to sell, or sell the Accused Product within the United States or import the Accused Product into the United States, and therefore, such relief is necessary to stop the ongoing irreparable harm to E-Link and to prevent Defendants from continuing to

benefit from the sales created by their unlawful infringing conduct.

**B.    An Order Preventing Transfer of Amazon Seller IDs During the Pendency of this Action**

To preserve the status quo, E-Link seeks an order temporarily modifying control of and prohibiting Defendants from transferring use or control of the Amazon Seller IDs being used and controlled by Defendants to other parties.

Once they become aware of litigation against them, Defendants operating via online e-commerce platforms easily can, and often will, modify e-commerce store data and content, change payment accounts, redirect consumer traffic to other sellers, and thereby thwart the Court's ability to grant meaningful relief. Haoyi Chen Decl. at ¶ 17.

Here, an interim order prohibiting the Amazon Defendants from transferring their e-commerce stores operating under the Amazon Seller IDs poses no burden on them, preserves the status quo, and ensures that this Court, after fully hearing the merits of this action, will be able to afford E-Link full relief.

**C.    An Order Preventing Fraudulent Transfer of Assets is Appropriate**

E-Link requests an *ex parte* order restraining the Amazon Defendant's assets so that E-Link's right to an equitable accounting of the Amazon Defendants' profits from sales of the Accused Products is not impaired. Issuing an *ex parte* order will ensure the Amazon Defendants' compliance. If such a restraint is not granted in this case, the Amazon Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. This fraudulent transfer would in-turn thwart E-Link's ability to obtain the monetary relief it seeks.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707,

709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992).

Here, E-Link has shown a strong likelihood of success on the merits of its patent infringement claims. Thus, under Section 284 of the Patent Act, E-Link is entitled to "damages adequate to compensate for the infringement, but in no event less than a *reasonable royalty* for the use made of the invention by the infringer…" 35 U.S.C. § 284 (emphasis added).

In calculating a reasonable royalty, courts generally analyze the fifteen *Georgia Pacific* factors. *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1081 (S.D.N.Y. 1970). When analyzing these factors, courts will often consider the infringer's actual profit from the sale of the infringing product(s). *See, e.g.*, *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766 (Fed. Cir. 2014) (finding that an infringers actual profits earned during the period of infringement can be relevant to the determination of a reasonable royalty); *z4 Techs., Inc. v. Microsoft Corp.*, 2006 U.S. Dist. LEXIS 58374 (E.D. Tex. 2006), aff'd, 507 F.3d 1340 (Fed. Cir. 2007) ("Evidence of an infringer's  actual profits are generally admissible when calculating a 'reasonable royalty.' *TWM Mfg. v. Dura Corp.*, 789 F.2d 895, 899 (Fed. Cir. 1986)."); *Pioneer Hi-Bred International, Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 142 (N.D. Iowa 2003) ("[A]ctual profits may be relevant to the calculation of a reasonable royalty."). Furthermore, E-Links' Complaint seeks, among other relief, that Defendants account for and pay to E-Link all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant E-Link's request for a prejudgment asset freeze to preserve the relief sought by E-Link.

E-Link has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen,

Defendants will likely hide or move their ill-gotten funds to offshore bank accounts.

Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

**D.  Plaintiff Is Entitled to Expedited Discovery**

The Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 06 C 6964, 2007 U.S. Dist. LEXIS 94061, at *18 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* (citations omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

1.  <u>Amazon.com and AmazonPayments, Inc. Provide Any Email Addresses Known to be Associated with Amazon Defendants Respective Seller IDs</u>

The Court should order "the owners, operators and/or administrators of the Internet marketplace platforms, including but not limited to, Amazon.com…and/or financial institutions, payment processors, banks, escrow services, and money transmitters, including but not limited to, Amazon Payments, Inc.…and their related companies and affiliates shall, at E-Link's request, provide E-Link's counsel with any email address known to be associated with the [Amazon] Defendants' respective Seller IDs." *Talavera Hair Products, Inc. v. Taizhou Yunsung Electrical Appliance Co., Ltd.*, No. 18-CV-823- JLS (JLB), 2018 U.S. Dist. LEXIS 199020, at *13 (S.D. Cal. May 10, 2018); *see also Apple Corps Ltd. v. 3W Store*, No. 18-cv-60656-UNGARO/HUNT, 2018 U.S. Dist. LEXIS 62250, at *18 (S.D. Fla. Apr. 11, 2018) ("[F]or the purpose of providing additional notice of this proceeding, and all other pleadings, orders, and documents filed herein,

23

the owners, operators and/or administrators of the Internet marketplace websites, financial institutions, payment processors, banks, escrow services, and money transmitters, including but not limited to…Amazon.com…[or]…Amazon, and their related companies shall, to the extent not already done, at Plaintiffs' request, provide Plaintiffs' counsel with any email address known to be associated with the Defendants' respective Seller IDs").

2.     Amazon Defendants' Bank and Payment System Accounts

The Amazon Defendants may be using third-party payment processors such as Visa, PayPal, and/or Western Union, which helps to increase their anonymity by interposing a third-party between the consumer and Defendants. Without being able to discover Defendants' bank and payment system accounts, any asset restraint would be of limited value because E-Link would not know the entities upon whom to serve the order.

E-Link respectfully requests expedited discovery to discover bank and payment system accounts the Amazon Defendants use for their infringing sales operations. The discovery requested on an expedited basis in E-Link's Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). Further, all relevant third-parties have in fact complied with identical requests in previous similar cases. More importantly, as Defendants have engaged in deceptive practices in hiding their identities and accounts, E-Link's asset restraint in the Temporary Restraining Order may have little meaningful effect

without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

### E.       Service of Process by Email is Warranted in this Case

Pursuant to Federal Rule of Civil Procedure 4(f)(3), E-Link also requests that the Court enter an order permitting it to serve the present motion and supporting documents along with the summons, complaint, proposed temporary restraining order, and notice of any hearing the Court may schedule on Defendants by email.

First, service of process by email is warranted for Defendant Uni-Sun given that Defendant Uni-Sun is located in China and has no apparent presence in the United States. Haoyi Chen Decl. at ¶¶ 12-14. On the other hand, Defendant Uni-Sun's website indicates that it can be contacted via email at info@hkunisun.com. *Id.* at ¶ 15.

Nevertheless, United States District Courts, including in this District, have routinely permitted alternative service of process notwithstanding the applicability of the Hague Convention. *See e.g.*, *In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("plaintiffs are not required to first attempt service through the Hague Convention."); *see also In re LDK Solar Securities Litigation*, No. C 07-05182 WHA, 2008 U.S. Dist. LEXIS 90702, at *4 (N.D. Cal. June 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority).

More importantly, the process of serving Defendant Uni-Sun with the relevant documents by international mail (and through the Hague Convention) would likely take weeks. If the Court grants E-Link's request for a temporary restraining order, the order would only remain in effect for a maximum of 14 days, and the hearing on the preliminary injunction must occur "at the

earliest possible time" prior to the expiration of the temporary restraining order. Fed. R. Civ. P. 65(b) ("The order expires at the time after entry–not to exceed 14 days–that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension.").

Secondly, service of process by email for the Amazon Defendants is appropriate and necessary because the Amazon Defendants, on information and belief: (1) rely primarily on electronic communications to communicate with its customers, demonstrating the readability of this method of communication and (2) E-Link is unable to determine the exact physical whereabouts or identities of the Amazon Defendants.[2] *See, e.g., Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*, No. 13 C 2167, 2013 U.S. Dist. LEXIS 47248, at *27 (N.D. Ill. Mar. 27, 2013) (finding service by email and electronic publication appropriate under similar circumstances). As such, E-Link respectfully requests this Court's permission to serve Defendants via email.

## V.     A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c).

Because of the strong and unequivocal nature of E-Link's evidence of patent infringement, E-Link respectfully requests that this Court require E-Link to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *See, e.g., Oakley, Inc. v. Does 1-100,* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) ($10,000 bond); *True Religion Apparel, Inc.*

---

[2] Although E-Link does not yet have email addresses for the Amazon Defendants, but through the discovery requested above, E-Link expects to obtain the email addresses and serve each Amazon Defendant immediately.

*v. Does 1-100,* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) ($10,000 bond); *Tory*

*Burch LLC v. Zhong Feng, et al.*, No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished)

($10,000 bond); *Coach, Inc., et al. v. Does 1-100,* No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012)

(unpublished) ($10,000 bond); *Deckers Outdoor Corp. v. Does 1-1,281,* No. 1:12-cv-01973

(N.D. Ill. Apr. 4, 2012) (unpublished) ($10,000 bond)*; Abercrombie & Fitch Trading Co. v.*

*4cheapbags.com,* No. 1:12-cv- 21088 (S. D. Fla. June 6, 2012) (unpublished) ($10,000 bond).

## VI.    CONCLUSION

E-Link's business is being irreparably harmed. Without entry of the requested relief, the

sale and/or importation of the Accused Products will continue. Therefore, entry of an *ex parte*

order is necessary to protect E-Link's patent rights, to prevent further harm to E-Link, and to

preserve the status quo. In view of the foregoing and consistent with previous similar cases, E-

Link respectfully requests that this Court enter a Temporary  Restraining Order in the form

submitted herewith and set a status hearing before the expiration of the Temporary Restraining

Order at which hearing E-Link intends to present a motion for preliminary injunction.


Dated:  January 14, 2020                          Respectfully submitted,

                                                  /s/ William J. Leonard
                                                  One of the Attorneys for Plaintiff

                                                  WILLIAM J. LEONARD (Bar ID # 6225444)
                                                  WANG, LEONARD & CONDON
                                                  Attorney for Plaintiff
                                                  33 N. LaSalle Street, Suite 2020
                                                  Chicago, Illinois 60602
                                                  Direct: 312-819-4651
                                                  Cell: 312-965-0013
                                                  Fax: 312-782-1669
                                                  Email: bill.wlc@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned attorney, certify that I electronically filed the foregoing document with the

Clerk of the Court using the CM/ECF system on January 14, 2019.

<u>/s/ William J. Leonard</u>
William J. Leonard
Wang, Leonard & Condon
33 North LaSalle Street, Suite 2020
Chicago, IL 60602
Phone: (312)782-1668
Email: bill.wlc@gmail.com